**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**WESTCODE, INC.,**

                        **Plaintiff,**

vs.                                     **3:15-cv-1474
(MAD/DEP)**

**MITSUBISHI ELECTRIC CORPORATION,**

                        **Defendant.**

_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **HANCOCK, ESTABROOK LAW FIRM**<br>100 Madison Street - Suite 1500<br>Syracuse, New York 13221-4976<br>Attorneys for Plaintiff | **JOHN G. POWERS, ESQ.**<br>**ASHLEY D. HAYES, ESQ.** |
| **PHILLIPS, CAMPBELL LAW FIRM**<br>314 North Middletown Road<br>Lima, Pennsylvania 19037<br>Attorneys for Plaintiff | **PATRICK C. CAMPBELL, JR., ESQ.** |
| **JENNER, BLOCK LAW FIRM**<br>Clark Street, Chicago Office<br>353 North Clark Street<br>Chicago, Illinois 60654<br>Attorneys for Defendant | **CATHERINE L. STEEGE, ESQ.**<br>**JOEL T. PELZ, ESQ.**<br>**TERRENCE J. TRAUX, ESQ.** |
| **JENNER, BLOCK LAW FIRM**<br>District of Columbia Office<br>1099 New York Avenue - Suite 900<br>Washington, DC 20001 | **WILLIAM C. PERICAK, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff Westcode, Inc. ("Plaintiff") commenced this action seeking a declaratory

judgment pursuant to the Pennsylvania Declaratory Judgments Act, 42 Pa.C.S.A. § 7351 *et seq.*,

on May 5, 2015, in the Court of Common Pleas, Chester County, Pennsylvania. *See* Dkt. No. 1 at 12. Defendant Mitsubishi Electric Corporation ("Defendant") removed the action to the District Court for the Eastern District of Pennsylvania on May 27, 2015. *See id.* at 7. The case was transferred to this Court on December 11, 2015. *See* Dkt. Nos. 32, 33. Currently pending before the Court is Defendant's motion to dismiss pursuant to Rules 12(b)(1) & 12(b)(6),[1] which Plaintiff has opposed. *See* Dkt. Nos. 10, 11.

## II. BACKGROUND[2]

Plaintiff is a Pennsylvania corporation that manufactures and assembles heating, ventilation, and air conditioning components for use in rail cars. Dkt. No. 11 at 3. Defendant is a Japanese corporation that also designs and manufactures systems for rail cars. *Id.* In 1997, the parties entered into an agreement titled the License and Technical Assistance Agreement ("LTAA"), which gave Plaintiff access to Defendant's designs. *Id.* at 3-4. The terms of the LTAA required Plaintiff to "pay a onetime upfront fee of $900,000.00 plus a royalty of 3% of the net sales price on finished product[s] [Plaintiff] sold to customers." *Id.* at 4. Thereafter, the parties entered into a Joint Venture Agreement ("JVA"), which "was effective for the term of the project known as the New York City Transit Authorty R142A Project" (the "R142A project"). *Id.* Under the JVA, the parties would split revenues generated by the sale of units for the R142A project, with approximately 47% to Plaintiff and 53% to Defendant. *Id.* At the termination of the

---

[1] Defendant also filed a motion to compel arbitration on September 9, 2015, *see* Dkt. No. 21, which will be addressed in a subsequent decision by this Court.

[2] The majority of the parties' arguments in the motion to dismiss concern whether the action should be transferred from the Eastern District of Pennsylvania to this Court. In light of the Eastern District of Pennsylvania's December 8, 2015 order directing such transfer, the following discussion does not address those arguments.

2

JVA, the parties continued the economic terms stated therein for the R143, R160, and PATH projects. *Id.* In 2008, Plaintiff fell behind on payments to Defendant for the R142A, R143, and R160 projects. *Id.* On November 13, 2008, the parties entered into a Memorandum of Understanding ("MOU") to restructure the payment terms for said projects with the amount due of $14,869,967.06. *Id.* at 4-5.

On April 27, 2015, Defendant filed suit in this Court[3] alleging that Plaintiff beached its obligation to pay approximately $10.8 million due under the MOU. *See* Dkt. No. 10 at 10. Thereafter, on May 5, 2015, Plaintiff commenced the instant action in the Court of Common Pleas in Chester County, Pennsylvania. *See* Dkt. No. 1 at 12. On May 27, 2015, Defendant removed the instant action to the District Court for the Eastern District of Pennsylvania on the basis of diversity jurisdiction. *See id.* at 7. Defendant then filed the instant motion to dismiss on July 1, 2015 and subsequent motion to compel arbitration on September 9, 2015. *See* Dkt. Nos. 10, 21. Prior to reaching the merits of these motions, on December 8, 2015, the Eastern District of Pennsylvania ordered the transfer of the action to this Court (the "December 8 Order"), pursuant to the first-filed doctrine and in connection with Defendant's pending action filed in this Court. *See* Dkt. Nos. 32, 33.

In the instant action, Plaintiff's complaint poses four separate claims for relief. Each count seeks a declaration from the Court that Defendant is barred by the statute of limitations from bringing an action against Plaintiff for payments due under the above-listed agreements and projects. Count I addresses payments pursuant to the LTAA, Count II for payments pursuant to

---

[3] Any citations to docket entries from this related case will be cited as Case No. 3:15-cv-505, Dkt. No. ___.

the JVA, Count III for payments due on the R143, R160, and PATH projects, and Count IV for payments pursuant to the MOU. Dkt. No. 1 at 16-19 ¶¶ 32-42.

## III. DISCUSSION

Defendant's motion to dismiss raises three separate arguments: (1) that the "first-filed" rule mandates dismissal or transfer of the action because Count IV is duplicative of a claim presented in its related case filed in this Court; (2) that the Court lacks subject matter jurisdiction to hear the case because the claims stated in Counts I, II, and III are not ripe for review; and (3) that the Court should exercise its discretion under the Declaratory Judgment Act to dismiss the complaint. *See* Dkt. No. 10 at 8-9.

Defendant filed the instant motion prior to the December 8 Order transferring the action to this Court, thus, Defendant's request for a transfer is denied as moot.

### A. Standard of Review

As an initial matter, the Court notes that Second Circuit law applies in deciding Defendant's motion to dismiss pursuant to the Federal Rules of Civil Procedure, notwithstanding that the motion was filed in the Eastern District of Pennsylvania. *See Smith v. Railworks Corp.*, No. 10 Civ. 3980, 2012 WL 752048, *5 (S.D.N.Y. Mar. 6, 2012) ("Generally, 'a transferee federal court must apply its own interpretation of federal law, not the construction of the transferring court's circuit") (citations and quotations omitted)).

#### *1. Rule 12(b)(1) Motion to Dismiss*

When a party moves to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (citations

omitted). For purposes of such a motion, "the allegations in the complaint are not controlling, and only uncontroverted factual allegations are accepted as true . . . ." *Id.* (internal citations omitted). Both parties are permitted to use affidavits and other pleading materials to support and oppose the motion to dismiss for lack of subject matter jurisdiction. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). "Furthermore, 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" *Gunst v. Seaga*, No. 05 Civ. 2626, 2007 WL 1032265, *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)); *see also State Empls. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (holding that, in a motion to dismiss for lack of subject matter jurisdiction, a court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits"). Since ripeness is a jurisdictional requirement, a motion pursuant to Rule 12(b)(1) is the proper mechanism for a defendant seeking to dismiss a declaratory judgment action on the grounds that the claims therein are not yet ripe. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293, 294 (S.D.N.Y. 2003) (citations omitted).

### *2. Declaratory Judgment Act*

"[A]ny court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see also Chirik v. TD BankNorth, N.A.*, No. 06-04866, 2008 WL 186213, *5 (E.D. Pa. Jan. 15, 2008) ("[E]ven though Plaintiff brought [its] claim under Pennsylvania's declaratory judgment statute, federal standards for declaratory relief apply"). A district court is without jurisdiction to hear an action for declaratory relief unless such case presents an "actual controversy." 28 U.S.C. § 2201(a); *see also Calderon v. Ashmus*, 523 U.S. 740, 745-46 (1998).

To rise to the level of an actual controversy, the relief requested must be for "a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Calderon*, 523 U.S. at 746 (quotation omitted). Whether a specific action for declaratory relief presents a justiciable case or controversy is necessarily a degree of ripeness. *See Duane Reade, Inc.*, 411 F.3d at 388. The Second Circuit's "standard for ripeness in a declaratory judgment action is that 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)).

The starting point for whether a justiciable controversy exists is "whether the declaratory relief sought relates to a dispute where the alleged liability has already accrued or the threatened risk occurred, or rather whether the feared legal consequence remains a mere possibility, or even probability of some contingency that may or may not come to pass." *Dow Jones & Co., Inc. v. Harrods, Ltd.*, 237 F. Supp. 2d 394, 406-07 (S.D.N.Y. 2002) (citing *Thomas v. Union Carbide Agric. Prod. Co.*, 473 U.S. 568, 580-81, 105 S. Ct. 3325, 87 L. Ed. 2d 409 (1985)). In cases where an affirmative legal dispute has not yet occurred, "the fact that 'liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action.'" *U.S. Dep't of Treasury v. Official Comm. of Unsecured Creditors of Motors Liquidation Co.*, 475 B.R. 347, 358 (S.D.N.Y. 2012) (quoting *Associated Indem. Corp. v. Fairchild Indus.*, 961 F.2d 32, 35 (2d Cir. 1992)). When potential liability is contingent upon uncertain events, such as anticipated litigation, "the Second Circuit instructs courts to focus on 'the practical likelihood that the contingencies will occur.'" *Id.* (quoting *Associated Indem. Corp.*, 961 F.2d at 35); *see also Gelmart Indus., Inc. v. Eveready Battery Co., Inc.*, 120 F. Supp. 3d 327, 331 (S.D.N.Y. 2014)

("[T]he threat of future litigation remains relevant in determining whether an actual controversy exists" (quoting *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 96 (2d Cir. 2011))). Further, communications "indicating a party's intent to take future legal action have been deemed a threat of litigation sufficient to create an actual controversy for adjudication." *In re Chateaugay Corp.*, 201 B.R. 48, 67 (Bankr. S.D.N.Y. 1996).

In general, "a 'declaratory judgment action should be entertained when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Classic Liquor Imps., Ltd. v. Spirits Int'l B.V.*, __ F. Supp. 3d__, 2015 WL 9487886, *2 (S.D.N.Y. Dec. 29, 2015) (quoting *Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 790 (2d Cir. 1986)). Importantly, affirmative defenses to expected future litigation may be raised in an action for declaratory judgment. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508 (1959); *see also BASF Corp v. Symington*, 50 F.3d 555, 558 (8th Cir. 1995) ("[C]ourts regularly consider the merits of affirmative defenses raised by declaratory plaintiffs") (collecting cases).

**B.      Plaintiff's Complaint**

   *1. Counts I, II, & III*

      *a. Ripeness*

Defendant contends that, since it has not commenced litigation seeking to enforce its rights under the contract provisions or projects at issue in Counts I-III, the Court lacks subject matter jurisdiction to hear this case because the parties interests are not legally adverse. *See* Dkt. No. 10 at 22-23; Dkt. No. 47 at 6-7. To support this position, Defendant cites to *Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp.*, 90 F.3d 671, 674 (2d Cir. 1996) and

*Kelly v. Evolution Markets, Inc.*, 626 F. Supp. 2d 364, 374 (S.D.N.Y. 2009). *See* Dkt. No. 47 at 6-7. In *Certain Underwriters*, an insurance carrier brought a declaratory action seeking a determination of whether it would be liable, as an excess insurance carrier, to cover clean-up costs at several environmental hazard sites under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). 90 F.3d at 674. The Second Circuit held that the action was not ripe, focusing on the numerous parties involved, the uncertainty of the insured's responsibility at each site, the unknown final clean-up costs, and the extensive period of time that the insured operated at each site prior to having coverage from the plaintiff carrier. In addressing these issues, the court stated as follows:

> Indeed, the record as a whole consists in large measure of speculation. Uncertainty surrounds [the insured's] liability. It has viable defenses, there are numerous other [potentially responsible parties] to share the unestablished remedial costs, and the challenged activity is spread out over a substantial time period, during much of which plaintiffs' policies were not in existence.

*Id.* at 674.

In *Kelly,* the plaintiff sought a declaratory judgment to absolve himself from contractual liability under certain non-compete agreements with his former employer. 626 F. Supp. 2d at 167. The specific section of the contract that the court addressed in its ripeness analysis was the agreement not to recruit the defendant's former employees. *Id.* at 374-75. The Second Circuit held the issue was not ripe, stating that the plaintiff "has not indicated his desire or willingness to recruit any employee away from [his former employer]." *Id.* at 374. The court recognized that, even if the plaintiff has such desire to do so, he had not identified any such individual and the court would not speculate as to the plaintiff's potential recruitment strategy or targets. *Id.* at 374-75.

8

The Court finds that the case at hand presents a significantly more concrete example of adverse parties than those presented in both *Certain Underwriters* and *Kelly*. The main focus in this inquiry is whether the court can be certain of the exact parties and claims that would arise in any potential future litigation. Unlike *Certain Underwriters*, where the court was presented with numerous potential parties susceptible to future litigation over a myriad of unknown claims, any future litigation in this case would only involve Plaintiff vs. Defendant, arguing over the amount due under the LTAA, the JVA, and on the R143, R160, and PATH projects. Importantly, Plaintiff has specifically alleged that Defendant insists that it is owed $1,827,128 under the LTAA, and $18,157,950 under the JVA and the remaining projects, such that the extent of any potential liability is not an uncertainty left for the Court to decide. *See* Dkt. No. 1 at 16 ¶ 29. Moreover, the threat of litigation is not entirely speculative, as it was in *Kelly*, since Defendant has shown its willingness to litigate the issue of Plaintiff's nonpayment by commencing the related action in this Court seeking payments under the MOU. Further, unlike *Kelly*, where the plaintiff's hypothetical recruit was an unknown and unspecified individual, each claim, contract, project, and party that would be the subject of any future legal action is clearly identified in Plaintiff's complaint and corresponding affidavits. *See* Dkt. No. 1 at 12-19; Dkt. No. 11-1.

Defendant next contends that any relief that the Court could grant in this case would not be sufficiently conclusive to resolve the parties legal disputes and, thus, would constitute an advisory opinion. *See* Dkt. No. 10 at 23-24; Dkt. No. 47 at 7. The cases cited by Defendant to support this argument, rather than standing for the proposition that a court is without jurisdiction to provide an advisory opinion, each dismissed the underlying declaratory judgment action on a discretionary, rather than jurisdictional, basis. In *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003), the Second Circuit concluded that, although the action was within the

9

district court's subject matter jurisdiction, the court correctly exercised its discretion to dismiss a declaratory judgment action after weighing five factors, which it stated were helpful to that discretionary determination. The Court discusses these factors, *infra,* when deciding whether to exercise similar discretion in this case. Similarly, in *Panama Processes S.A. v. Cities Serv. Co.*, 362 F. Supp. 735, 738 (S.D.N.Y. 1973), *aff'd* 496 F.2d 533 (2d Cir. 1974), the Southern District stated that, although there was arguably a justiciable controversy between the parties, the judge exercised the discretion not to entertain the case because the requested relief "[would] not settle the legal relations in issue nor [would] it terminate the controversy giving rise to the proceeding." *Id.* at 739-40. The relief requested in *Panama Processes* sought to declare that a particular contract was in force and binding upon the parties, and to enjoin the defendant from breaching the terms of that contract. *Id.* at 737. Importantly, the parties did not seek an interpretation of the allegedly binding contract, the terms of which were in dispute between the parties. The court concluded that, even if it granted the relief sought to declare that the agreement was binding, subsequent litigation would be necessary to determine the duties and responsibilities that the contract would place upon the parties, thus, resulting in piecemeal litigation. *Id.* at 737-38.

In this case, granting the requested relief would provide a much more concrete and permanent answer to the legal issues underlying the instant action. In *Panama Processes*, the court was presented with a case where, even if it granted the relief sought in the declaratory judgment, future litigation would be necessary to interpret the terms of the underlying agreement. Here, should the Court determine that any claims Defendant may have under the LTAA, JVA, or R143, R160, and PATH projects are barred by the statute of limitations, this would provide a final judgment that would conclusively end the potential legal disputes and financial uncertainties between the parties arising out of these projects. With the grant of such relief, Plaintiff would no

10

longer be financially burdened by the assertion of claims against it, which have allegedly prohibited it from conducting business and obtaining financing. *See* Dkt. No. 1 at 16 ¶ 30. If the Court finds that such claims are not barred by the statute of limitations, that will also provide relief to Plaintiff's uncertainty in knowing that it must continue to list its alleged indebtedness to Defendant in any financial disclosures as it would potentially still be bound to repay those amounts.

Defendant also argues that any judgment in this action would not be sufficiently conclusive because the final determination would have to be made upon a hypothetical set of facts. *See* Dkt. No. 10 at 23-24. Specifically, Defendant asserts that the parties may "disagree on which payments were missed and when, which would affect the accrual date of the applicable statute of limitations and thus the final judgment." *Id.* at 24. Contrary to this unsupported assertion, Plaintiff has sufficiently alleged the due date of any payments arising under each of the agreements. *See* Dkt. No. 1 at 13-15 ¶¶ 9, 10, 18-22, 26. In its complaint, Plaintiff asserts that any payments due to Defendant under the disputed agreements were payable at the latest in December of 2010. *See id.* Plaintiff's allegations are supported by the declaration of its chief executive officer, Edward J. Widdowson, *see* Dkt. No. 11-1 at 2-9 ¶¶ 5-7, 10, 14, 16-17, and the payment terms contained in the LTAA and JVA, *see id.* at 18, 23, 43, 46, 55. To the extent that Defendant contests the payment schedules presented in Plaintiff's complaint and supporting affidavits, it has failed to provide any evidence apart from the arguments in its briefs as to why the purported time-line is inapplicable to the facts of this case. *See State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007) (noting that the court should examine outside evidence, including affidavits, in determining contested factual arguments as to whether jurisdiction exists).

11

Defendant further contends that Plaintiff is asserting a hypothetical, unknown statute of limitations. *See* Dkt. No. 10 at 23-24. However, the issue of which statute of limitations governs the underlying contract is easily resolvable by the Court. Since the agreements explicitly state that they are governed by the laws of the United States, *see* Dkt. No. 11-1 at 26, 54, this Court would use established Second Circuit precedent to determine which state's statute of limitations applies to the instant contract dispute. *See, e.g.*, *Glynwill Invs., N.V. v. Prudential Sec., Inc.*, No. 92 Civ. 9267, 1995 WL 362500, *3 (S.D.N.Y. June 16, 1995) ("A federal court siting in diversity applies the statute of limitations supplied by the forum state" (citing *City of W. Haven v. Commercial Union Ins. Co.*, 894 F.2d 540, 544 (2d Cir. 1990)); *see also* N.Y. C.P.L.R. § 202 (noting that the statute of limitations of another jurisdiction may apply to actions accruing outside of New York, so long as it imposes a shorter limitation period). Thus, any claims accruing from the non-payment under the agreements would have a specific accrual time and limitation period that would allow the Court to definitively rule on Plaintiff's requested relief.

Lastly, Defendant argues that any final decision in this case would be an advisory opinion because the Court cannot render a judgment with practical utility to the parties on Counts I-III. *See* Dkt. No. 10 at 24-25; Dkt. No. 47 at 7-8. This argument is undermined by the declaration of Plaintiff's CEO that the potential liability to Defendant under these claims is seriously affecting its ability to conduct business in a profitable manner. Edward J. Widdowson declared that "the mere presence of [Defendant's] claim has had a severely deleterious effect on [Plaintiff's] finances" and that the "presence of the unresolved . . . claims has caused [Plaintiff's] lender . . . to shut off [its] line of credit." Dkt. No. 11-1 at 6 ¶¶ 14, 16. Further, other banks and lenders will not consider doing business with Plaintiff due to the potential liability from Defendant's claims. *Id.* at 6 ¶ 17. This has caused Plaintiff to "shut down its assembly plant in West Chester,

[Pennsylvania] and lay off over 100 employees." *Id.* Thus, if the Court were to grant Plaintiff's request for declaratory judgment, it would remove this cloud on Plaintiff's finances and allow it to continue operating its business without the uncertainty of potentially owing Defendant millions of dollars.

In light of Plaintiff's affirmative declarations outlining the specificity of any potential future litigation on Counts I-III, the clear language of the JVA and LTAA establishing when payments were due to Defendant, and the conclusive nature of the relief sought, contrasted with Defendant's unsupported arguments that any judgment in this case would be advisory and based on a "hypothetical state of facts," the Court finds that Plaintiff has carried its burden to establish that the claims presented in its action for a declaratory judgment are ripe for review. Accordingly, Defendant's motion to dismiss Counts I-III for lack of subject matter jurisdiction is denied.

### *b. Discretionary Dismissal*

A district court's decision to entertain a declaratory judgment action, assuming that it otherwise has subject matter jurisdiction over the case, lies within the discretion of that court. *See Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003). The Second Circuit has stated that a district court may consider the following five factors in exercising its discretion under the Declaratory Judgment Act: (1) "whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved"; (2) "whether a judgment would finalize the controversy and offer relief from uncertainty"; (3) "whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'"; (4) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the

13

domain of a state or foreign court"; and (5) "whether there is a better or more effective remedy." *Id.* (citations omitted).

The subject matter jurisdiction analysis discussed above resolved the first two factors in favor of the Court hearing the instant action. For the third factor, any dispute as to whether this action was being used for "procedural fencing" or a "race to res judicata" was definitively addressed by the Eastern District of Pennsylvania's discussion regarding the transfer of the action to this Court pursuant to the first-filed doctrine. The December 8 Order determined that it was the case filed by Defendant in this Court, and not the instant action initially filed in Chester County, Pennsylvania, that established the appropriate venue for this case. *See* Dkt. No. 32.

For the fourth factor, the language of the agreements at issue clearly indicates the parties' intent that this Court hear the instant action. Specifically, the LTAA and the JVA both state that the governing law shall be that of the United States. *See* Dkt. No. 11-1 at 26, 54. Moreover, to the extent that this Court's entertaining the action would impinge on the jurisdiction of Pennsylvania's state courts since the action was initially commenced pursuant to the Pennsylvania Declaratory Judgment Act, those issues were properly resolved upon Defendant's removal of the case to the Eastern District of Pennsylvania and subsequent transfer to this Court.

The final factor, whether there is a better or more effective remedy to resolve the instant dispute, requires a more in-depth analysis in this case. In a separate motion, Defendant is asking the Court to compel arbitration on Counts I-III pursuant to the Federal Arbitration Act ("FAA"). *See* Dkt. No. 21. That motion is based upon the language contained in the JVA that

> [a]ny disputes, controversies or claims arising out of this
> AGREEMENT or the PROJECT which may arise between the
> MEMBERS shall be finally submitted to and settled by arbitration
> to take place at The Court of Arbitration of the International
> Chamber of Commerce, Paris, France in accordance with the Rules

> of the International Chamber of Commerce. Proceedings shall be
> conducted in the English language.

Dkt. No. 11-1 at 54. Likewise, the LTAA contains a clause that states

> [a]ny disputes between the parties shall be settled by discussion
> between the parties, or, failing this, by referring the matter in
> dispute to the decision of a third party acceptable to both parties. In
> the case that a third party acceptable to LICENSOR and
> LICENSEE cannot be determined or if the third party is unable to
> reach a decision, the matter may be settled by an appropriate court
> of law.

*Id.* at 28. If the arbitration clauses in these agreements are binding upon the claims presented in Plaintiff's complaint, then submitting this issue to arbitration may be a more appropriate remedy than the Court deciding the declaratory judgment action. *See Smith v. Metro. Prop. & Liab. Ins. Co.*, 629 F.2d 757, 759-60 (2d Cir. 1980). However, neither party addressed the possibility of the claims being submitted to arbitration in their briefs on the instant motion to dismiss. The issue of whether this case should be sent to arbitration is not clear-cut, as evidenced by the parties' submissions of seven separate briefs, totaling over 90 pages plus numerous declarations and exhibits, that argue each side's position on the issue. *See* Dkt. Nos. 21, 22, 26, 29, 47, 52, 60. With the limited evidence before the Court on this motion to dismiss, and without fully deciding the subsequent motion to compel arbitration, the Court cannot conclude that arbitration is a more appropriate remedy to resolve the claims set forth in Plaintiff's complaint.[4] Accordingly, based

---

[4] The Court notes that if it finds that the FAA mandates arbitration in this case after considering Defendant's motion to compel arbitration, then it must stay rather than outright dismiss Plaintiff's underlying action for declaratory judgment. *See Katz v. Cellco P'ship*, 794 F.3d 341, 347 (2d Cir. 2015) (rejecting the argument that a district court may dismiss a claim pending arbitration and "conclud[ing] that the text, structure, and underlying policy of the FAA mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested").

upon a balance of the factors discussed herein, the Court denies Defendant's request to dismiss Counts I-III on a discretionary basis.

   *2. Count IV*

Count IV of Plaintiff's complaint asks the Court to declare that "all claims that [Defendant] has, had or could have had, for payments under the MOU [are] barred by the statute of limitations." Dkt. No. 1 at 18-19. In the related, first-filed action brought by Defendant seeking payments for amounts due under the MOU, Plaintiff's first affirmative defense argues that Defendant's "claims are barred in whole or in part by the applicable statute of limitations[,] including but not limited to [the] statute of limitations of the state in which the cause of action accrued." Case No. 3:15-cv-505, Dkt. No. 38 ¶ 26. Thus, Plaintiff is asking the Court to determine the same legal questions in both pending cases. Accordingly, Count IV of Plaintiff's complaint is dismissed as duplicative of its affirmative defense in the first-filed case. *See Campbell v. Sposato*, No. 15-CV-1958, 2015 WL 3648624, *2 (E.D.N.Y. June 8, 2015) ("The Second Circuit has long adhered to the first-filed doctrine in deciding which case to dismiss where there are competing litigations" (quotation and citations omitted)).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss (Dkt. No. 10) is **DENIED** as to Counts I, II, and III of Plaintiff's complaint and **GRANTED** as to Count IV; and the Court further

**ORDERS** that Count IV of Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that Defendant's request to transfer the action is **DENIED** as moot; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local rules.

**IT IS SO ORDERED.**

Dated: March 18, 2016
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge