**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**WESTCODE, INC.,**

                                        **Plaintiff,**

        **vs.**                                        **3:15-cv-1474**
                                                       **(MAD/DEP)**

**MITSUBISHI ELECTRIC CORPORATION,**

                                        **Defendant.**
_____

**APPEARANCES:**                        **OF COUNSEL:**

**HANCOCK, ESTABROOK LAW FIRM**          **JOHN G. POWERS, ESQ.**
100 Madison Street - Suite 1500          **ASHLEY D. HAYES, ESQ.**
Syracuse, New York 13221-4976
Attorneys for Plaintiff

**PHILLIPS, CAMPBELL LAW FIRM**          **PATRICK C. CAMPBELL, JR., ESQ.**
314 North Middletown Road
Lima, Pennsylvania 19037
Attorneys for Plaintiff

**JENNER, BLOCK LAW FIRM**               **CATHERINE L. STEEGE, ESQ.**
Clark Street, Chicago Office             **JOEL T. PELZ, ESQ.**
353 North Clark Street                   **TERRENCE J. TRAUX, ESQ.**
Chicago, Illinois 60654
Attorneys for Defendant

**JENNER, BLOCK LAW FIRM**               **WILLIAM C. PERICAK, ESQ.**
District of Columbia Office
1099 New York Avenue - Suite 900
Washington, DC 20001
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

On May 5, 2015, Westcode, Inc. ("Westcode") commenced the instant action, Case No. 15-cv-1474, in the Court of Common Pleas, Chester County, Pennsylvania, against Mitsubishi Electric Corporation ("Mitsubishi") seeking a declaratory judgment pursuant to the Pennsylvania Declaratory Judgments Act, 42 Pa.C.S.A. § 7351 *et seq. See* Dkt. No. 1 at 12.[1] On April 27, 2015, Mitsubishi commenced Case No. 15-cv-505 in this Court asserting a breach of contract claim against Westcode. *See* 15-cv-505, Dkt. No. 1. Mitsubishi removed the instant action to the District Court for the Eastern District of Pennsylvania on May 27, 2015. *See* Dkt. No. 1 at 7. The case was transferred to this Court on December 11, 2015. *See* Dkt. Nos. 32, 33. In a Memorandum-Decision and Order dated March 18, 2016, (the "March 18 Order"), this Court denied in part and granted in part Mitsubishi's motion to dismiss. *See* Dkt. No. 65. Currently pending before the Court is Mitsubishi's motion to compel arbitration. *See* Dkt. Nos. 21, 22, 26, 29, 60.

## II. BACKGROUND

**A.      Factual Background**

Westcode is a Pennsylvania corporation that manufactures and assembles heating, ventilation, and air conditioning ("HVAC") components for use in rail cars. *See* Dkt. No. 11 at 3. Mitsubishi is a Japanese corporation that also designs and manufactures systems for rail cars. *Id.* In 1997, the parties entered into an agreement titled the License and Technical Assistance Agreement ("LTAA"), which gave Westcode access to Mitsubishi's designs. *Id.* at 3-4. The terms of the LTAA required Westcode to "pay a onetime upfront fee of $900,000.00 plus a

---

[1] All citations will be to the docket of Case No. 3:15-cv-1474, unless otherwise noted. Citations to the docket of the related Case No. 3:15-cv-505 will be cited as "15-cv-505, Dkt. No. ___."

royalty of 3% of the net sales price on finished product[s] Westcode sold to customers." *Id.* at 4. Thereafter, the parties entered into a Joint Venture Agreement ("JVA"), which "was effective for the term of the project known as the New York City Transit Authorty R142A Project" (the "R142A project"). *Id.* Under the JVA, the parties would split revenues generated by the sale of units for the R142A project, with approximately 47% to Westcode and 53% to Mitsubishi. *Id.* At the termination of the JVA for the R142A project, the parties entered into substantially similar JVAs for the R143, R160, and PATH projects (collectively the "Projects") that continued the conditions stated in the R142A project's JVA. *Id.*; Dkt. No. 21 at 15-44. In 2008, Westcode fell behind on payments to Mitsubishi for the R142A, R143, and R160 projects. Dkt. No. 11 at 4. On November 13, 2008, the parties entered into a Memorandum of Understanding ("MOU") to restructure the payment terms for said projects with the total amount due of $14,869,967.06. *Id.* at 4-5.

On April 27, 2015, Mitsubishi filed Case No. 15-cv-505 in this Court alleging that Westcode breached its obligation to pay approximately $10.8 million due under the MOU (hereinafter the "MOU Action"). *See* 15-cv-505, Dkt. No. 1. Thereafter, on May 5, 2015, Westcode commenced the instant action against Mitsubishi in the Court of Common Pleas in Chester County, Pennsylvania (hereinafter the "JVA Action"). *See* Dkt. No. 1 at 12. On May 27, 2015, Mitsubishi removed the JVA Action to the District Court for the Eastern District of Pennsylvania on the basis of diversity jurisdiction. *See id.* at 7. Mitsubishi then filed a motion to dismiss that action on July 1, 2015, and subsequent motion to compel arbitration on September 9, 2015. *See* Dkt. Nos. 10, 21. Prior to reaching the merits of these motions, on December 8, 2015, the Eastern District of Pennsylvania ordered the transfer of the action to this Court, pursuant to

the first-filed doctrine and in connection with Mitsubishi's pending MOU Action filed in this Court. *See* Dkt. Nos. 32, 33.

## C.     The JVA Action

In the JVA Action, Westcode seeks a declaration from the Court that Mitsubishi is barred by the statute of limitations from bringing an action against Westcode for payments due under the above-listed agreements and projects. Count I addresses payments pursuant to the LTAA, Count II for payments pursuant to the JVA, and Count III for payments due on the R143, R160, and PATH projects. Dkt. No. 1 at 16-19 ¶¶ 32-39.

## B.     The MOU Action

In the MOU Action, Mitsubishi asserts that Westcode breached its obligations under the MOU to pay $10,765,876.86 of the $14,869,967.06 due to Mitsubishi under that agreement. *See* 15-cv-505, Dkt. No. 1 at ¶¶ 21-25. In its answer, Westcode asserts two counterclaims; first, that Westcode is entitled to an accounting of all items relating to the Projects, such that any excess payments under the JVAs or other contractual adjustments would offset what Westcode owes under the MOU. 15-cv-505, Dkt. No. 38 at ¶¶ 37-63. Second, Westcode contends that Mitsubishi breached its obligations under the JVAs by failing to conduct itself in a commercially reasonable manner and that it breached its implied covenant of good faith and fair dealing. *Id.* at ¶¶ 64-67. Mitsubishi has also moved to compel arbitration of Westcode's counterclaims in the MOU Action. *See* 15-cv-505, Dkt. No. 42.

## III. DISCUSSION

## A.     Standard of Review

4

As an initial matter, the Court notes that Second Circuit law applies in deciding Mitsubishi's motions to compel arbitration, notwithstanding that the motion in the JVA Action was filed in the Eastern District of Pennsylvania. *See Smith v. Railworks Corp.*, No. 10 Civ. 3980, 2012 WL 752048, *5 (S.D.N.Y. Mar. 6, 2012) ("Generally, 'a transferee federal court must apply its own interpretation of federal law, not the construction of the transferring court's circuit'") (quoting *United States v. Sidhu*, 2003 U.S. App. LEXIS 1366, *4 (2d Cir. 2003) (other citations omitted).

The Federal Arbitration Act ("FAA") states that, upon motion of either party to the contract, a district court shall compel arbitration of claims arising out of that contract if it contains a valid arbitration clause. *See* 9 U.S.C. § 4. The terms of the FAA are to be strictly enforced. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed"). Moreover, "[a]rbitration is especially favored in resolving disputes involving international commerce . . . ." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 223 (2d Cir. 2001) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). However, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (quotation omitted).

The FAA applies to contracts seeking to settle a case by reference to a third party mediator regardless of if the clause specifically identifies arbitration, or some other form of mediation, as the vehicle to resolve the dispute. *See AMF Inc. v. Brunswick Corp.*, 621 F. Supp. 456, 459-60 (E.D.N.Y. 1985) (discussing the origins and evolution of the FAA and holding that "[i]f the parties have agreed to submit a dispute for a decision by a third party, they have agreed

to arbitration"); *see also CB Richard Ellis, Inc. v. Am. Envt'l Waste Mgmt.*, No. 98-CV-4183, 1998 WL 903495, *2 (E.D.N.Y. Dec. 4, 1998) ("Because the mediation clause in the case at bar manifests the parties' intent to provide an alternative method to 'settle' controversies arising under the parties . . . agreement, this mediation clause fits within the [FAA's] definition of arbitration").

The threshold question for determining the applicability of an arbitration agreement is "whether 'the arbitration agreement [is] broad or narrow.'" *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (quotation omitted). If the agreement contains a broad clause, "then there is a presumption that the claims are arbitrable." *Id.*

## B.    The Agreements

Each of the JVAs for the R142A, R160, and PATH projects contain the same arbitration language:

> Any disputes, controversies or claims arising out of this AGREEMENT or the PROJECT which may arise between the MEMBERS *shall be finally submitted to and settled by arbitration to take place at The Court of Arbitration of International Chamber of Commerce, Paris, France in accordance with the Rules of the International Chamber of Commerce.* Proceedings shall be conducted in the English language.

Dkt. No. 1 at 66 (R142A); Dkt. No. 21 at 25 (R160) & 42 (PATH). While no written agreement exists for the R143 project, Westcode affirmed that the "R143 joint venture was performed under the same terms as the written agreements." 15-cv-505, Dkt. No. 44-2 at ¶ 9.

Article 27 of the LTAA likewise provides for alternative dispute resolution of any claim arising under that agreement:

> Any disputes between the parties shall be settled by discussion between the parties, or failing this, by referring the matter in dispute to the decision of a third party acceptable to both parties. In the case that a third party acceptable to LICENSOR and LICENSEE

> cannot be determined or if the third party is unable to reach a
> decision, the matter may be settled by an appropriate court of law.

Dkt. No. 1 at 40.

Each of the arbitration clauses in the JVAs and the LTAA constitute broad arbitration agreements given their expansive language that they encompass "any disputes" between the parties relating to the respective projects. *See Collins & Aikman Prods.*, 58 F.3d at 20 ("The clause in this case, submitting to arbitration '[a]ny claim or controversy arising out of or relating to th[e] agreement,' is the paradigm of a broad clause"). While it is presumed that each of the claims arising out of these agreements is subject to arbitration given the broad arbitration clause, *see id.*, the Court will briefly discuss the applicability of the clause to each claim that Mitsubishi seeks to arbitrate.

## C.    Westcode's Claims

Count I of the JVA Action seeks a declaration that any "claims that Mitsubishi has, had or could have had, for payments under the LT[A]A [are] barred by the statute of limitations . . . ." Dkt. No. 1 at 17. Westcode argues that the LTAA does not contain a binding arbitration agreement because it does not specifically refer to arbitration and allows for the parties to resort to an appropriate court of law to resolve issues if they cannot agree on an arbitrator. *See* Dkt. No. 22 at 12-13. This argument is unpersuasive in light of the broad construction of the FAA in construing any agreement to submit claims to be settled by a third party as a valid agreement to arbitrate. *See AMF Inc.*, 621 F. Supp. at 459-60. The LTAA clearly states that, if the parties are not able to resolve their issues through settlement discussions, "[a]ny disputes between the parties shall be settled . . . by referring the matter in dispute to the decision of a third party acceptable to

both parties." Dkt. No. 1 at 40. Thus, the LTAA contains a valid arbitration agreement and the claims asserted in Count I of the JVA Action fall within its scope.

Count II seeks a declaration that "all claims that Mitsubishi has, had or could have had, for payments under the JVA [are] barred by the statute of limitations . . . ." *Id.* at 17. It is undisputed that Count II falls squarely within the identical arbitration clauses contained in each of the JVAs.

Count III seeks a declaration that "all claims that Mitsubishi has, had or could have had, for payments under the projects known as R143, R160 and PATH [are] barred by the statute of limitations . . . ." *Id.* at 18. While Count III does not specifically cite the JVA for the R160 and PATH projects, each of these projects was covered by a JVA that contained the same arbitration clause as the initial JVA between the parties. *See* Dkt. No. 21 at 25 (R160) & 42 (PATH).

Westcode argues that, to the extent that Count III implicates the R143 project, the claim is not subject to arbitration because there is "no written arbitration agreement" for that project. Dkt. No. 22 at 13. Mitsubishi concedes that there was no written agreement for the R143 project. Dkt. No. 21 at 7 n.2. Thus, the Court must examine outside evidence concerning the R143 project to determine if, notwithstanding the lack of a separate written agreement, the parties intended to be bound to arbitration for claims arising out of that project.

"Whether a valid agreement to arbitrate exists is determined by state law principles governing the formation of contracts." *Colo.-Ark.-Tex. Distrib., L.L.C. v. Am. Eagle Food Prods., Inc.*, 525 F. Supp. 2d 428, 433 (S.D.N.Y. 2007) (citing *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003)) (other citation omitted). New York courts apply the "center of gravity" approach to determine which state's law applies in a contract case. *See Duffey v. Twentieth Century Fox Film Corp.*, 14 F. Supp. 3d 120, 129 (S.D.N.Y. 2014) (citations omitted). "To find the center of gravity for a particular contract, courts consider the significance of various

contacts with the relevant jurisdictions, including where the contract was drafted, negotiated, executed, and performed; the location of the subject matter; and the domicile or place of business of the contracting parties." *Id.* (quoting *Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1539 (2d Cir. 1997)) (other citation omitted). Here, the potential states that have an interest interpreting the R143 contract are New York, where the project was located, and Pennsylvania, where the agreement was negotiated and where Westcode's principal place of business is located. *See* Dkt. No. 11 at 17-19. While Mitsubishi is a Japanese corporation and some of the negotiations may have occurred in Japan, Japanese law is not appropriate to govern this dispute because the JVAs contain a provision that they shall "be construed and interpreted with the laws of the U.S.A." *See* Dkt. No. 1 at 66; *see also* Dkt. No. 21 at 24, 41-42. The Court finds that it need not determine which state's laws apply in considering whether the R143 project is subject to arbitration, as the laws of both New York and Pennsylvania lead to the same conclusion in this case.

The FAA "requires arbitration agreements to be in writing." *Kilmer v. Flocar, Inc.*, 212 F.R.D. 66, 72 (N.D.N.Y. 2002) (citing *In re Arbitration Between Chung & President Enters.*, 943 F.2d 225, 229 (2d Cir. 1991)). However, in contract disputes arising out of oral contracts, both New York and Pennsylvania law provides that such claims may be subject to an arbitration clause in a previously written agreement if the record reflects that the parties prior course of dealing indicates that they intended to be bound by said arbitration clause. *See Westinghouse Elec. Co. v. Murphy, Inc.*, 425 Pa. 166, 171-72, 228 A.2d 656, 659 (Pa. 1967) (citing *Silverstein v. Hornick*, 376 Pa. 536, 103 A.2d 734 (Pa. 1954)) (holding that, under Pennsylvania law, if a contract is "wholly composed of oral communications, the precise content of which is not of record, courts must look to surrounding circumstances and the course of dealings between the parties to

ascertain the intention of the parties"); *Great N. Ins. Co. v. ADT Sec. Servs., Inc.*, 517 F. Supp. 2d 723, 742 (W.D. Pa. 2007) (collecting cases that "addressed the issue of whether the parties' prior course of dealing and/or trade usage is sufficient to show that the parties intended to incorporate limitation of liability, warranty, or arbitration clauses in their agreements" and noting that "[t]he courts have granted motions for summary judgment when the evidence established a prior course of dealing between the parties"); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir. 1995) ("New York law allows an arbitration agreement to rest on 'evidence of a trade usage or of a prior course of dealings'") (quoting *Schubtex, Inc. v. Allen Snyder, Inc.*, 49 N.Y.2d 1, 6, 424 N.Y.S.2d 133, 399 N.E.2d 154 (1979)).

Here, the parties worked together as a joint venture on four separate projects; R142A, R160, PATH, and R143. Each of these projects involved providing HVAC units to commercial rail car operators in New York City. *See* Dkt. No. 1 at 14 ¶¶ 12-15. Three of these projects, the R142, R160, and PATH, contained the exact same written arbitration agreements. Importantly, Westcode acknowledges that "the R143 joint venture was performed under the same terms as the written agreements." 15-cv-505, 44-2 at ¶ 9; 15-cv-505, Dkt. No. 38 at ¶ 44. There is no evidence that the parties intended the R143 project to be covered by any other agreements, or for the relationship between the parties to be organized any differently than as stated in the terms of the written JVAs. Moreover, Westcode's allegations in the JVA Action and its counterclaims in the MOU Action combine its arguments as to each of the Projects together and fail to draw any meaningful distinction between the Projects, such as would infer that the agreements underlying each should be interpreted independently by the Court. *See* Dkt. No. 1 at 15 ¶¶ 20-23, 17 ¶¶ 35-37; 15-cv-505, Dkt. No. 38 at ¶¶ 27-63. The Court finds that, given Westcode's acknowledgment that the R143 project was performed under the same terms as the written JVAs, coupled with the

identical arbitration clauses contained in the three written agreements and the substantially similar nature of the R142, R160, PATH, and R143 projects, the record contains sufficient evidence to conclude that the R143 project was undertaken in accordance with the terms of the written JVAs. Therefore, the arbitration clause contained in the written JVAs is likewise applicable to the R143 project. *See Schubtex, Inc.*, 49 N.Y.2d at 6 ("[A] determination that a written provision for arbitration has, in fact, been incorporated in the oral agreement of the parties in consequence of either trade usage or a prior course of dealings must be supported by evidence in the record"). Thus, the Court finds that each of the projects performed under the terms of the JVAs as stated in Count III, including the R143 project, are subject to the binding arbitration clause contained therein. Absent Mitsubishi's waiver of its right to compel arbitration, each of Westcode's claims are subject to resolution by arbitration.

**D.      Waiver**

Despite the strong federal policy favoring the enforcement of arbitration clauses in contracts, a party may nonetheless waive its right to arbitration. *See PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997). Waiver should only be found in the most egregious situations, and "'any doubts concerning whether there has been a waiver are resolved in favor of arbitration.'" *Id.* (quoting *Leadertex Inc.*, 67 F.3d at 25). The Second Circuit evaluates whether a party has waived its right to arbitration by considering "(1) the time elapsed from the commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice." *Id.*

*1. Whether MOU is Subject to Arbitration*

11

As a threshold issue, Westcode argues that Mitsubishi waived its right to arbitrate the claims in this action when it commenced the MOU Action. *See* Dkt. No. 52-1 at 11-19. Generally, Westcode contends that the MOU is subject to the arbitration clause contained in the JVAs, therefore, Mitsubishi's litigation of claims under the MOU waives its right to compel arbitration of any claims subject to the JVAs arbitration clause. Westcode first argues that the MOU is not an independent agreement between the parties but, rather, is an amendment of the R160 JVA and, thus, subject to the arbitration clause contained therein. *See* Dkt. No. 52-1 at 11-15. In the alternative, Westcode argues that, even if the MOU is its own agreement without an arbitration clause, Mitsubishi's collateral claims in the MOU Action are arbitrable because the broad arbitration clause in the JVAs covers the claims asserted. *See* Dkt. No. 52-1 at 15-19. At this point, the Court need not determine whether the MOU is an amendment to the JVAs, or its own subsequent contract because, either way, Mitsubishi's claims in the MOU Action clearly fall within the scope of the arbitration clause contained in the JVAs.

As previously noted, the JVAs contain a broad arbitration clause. Thus, "'there arises a presumption of arbitrability' and arbitration of even a collateral matter will be ordered if the claim alleged 'implicates issues of contract construction or the parties' rights and obligations under it." *Louis Dreyfus Negoce S.A.*, 252 F.3d at 224 (quoting *Collins & Aikman Prods.*, 58 F.3d at 23). As such, "all issues that 'touch matters' within the main agreement" are subject to arbitration. *Id.* at 225; *see also Collins & Aikman Prods.*, 58 F.3d at 21 ("If a court concludes that a clause is a broad one, then it will order arbitration and any subsequent construction of the contract and of the parties' rights and obligations under it are within the jurisdiction of the arbitrator") (quotation omitted). The Second Circuit clarified that the relevant inquiry for whether a collateral issue is subject to an arbitration clause contained in a previous agreement requires an analysis of the

conduct alleged in the underlying complaint to see if it is within the scope of the arbitration

agreement, rather than relying on the legal titles attributed to the claims:

> In determining whether a particular claim falls within the scope of
> the parties' arbitration agreement, we focus on the allegations in the
> complaint rather than the legal causes of action asserted.  *If the
> allegations underlying the claims 'touch matters' covered by the
> parties' . . . agreements*, then those claims must be arbitrated,
> whatever the legal labels attached to them.

*Collins & Aikman Prods.*, 58 F.3d at 20-21 (quotation and citations omitted) (emphasis in

original).

The language of the MOU repeatedly states that the obligations contained in that

agreement relate to the parties' obligations under the JVA Projects.  The preamble states as

follows:

> **WHEREAS**, the Parties confirmed that Westcode delayed its
> payment in due for the [R142A, R143, R160, and PATH] projects .
> . . and as a result, Westcode owes [Mitsubishi] the amount of [ ]
> Unites States dollars in total as of July 31st, 2008;
> **WHEREAS**, the Parties have discussed these delayed payment
> issues and reached an agreement for the revised payment schedule
> for the Projects as well as the liquidated damages provision for the
> further unjustified delay;
> **WHEREAS**, the Parties agree to enter into this MOU for the
> purpose of amending and supplementing the existing contracts for
> the Project[s] . . .

Dkt. No. 1 at 71.  Article 1 of the MOU explicitly states that the $14,869,967.06 owed under that

agreement represents "overdue payments which Westcode owe[d] [Mitsubishi] . . . under the

[R142A, R143, R160, and PATH] Projects . . . ."  *Id.*  Moreover, Mitsubishi has made repeated

assertions that the payments addressed by the MOU arose out of the previous JVA Projects.

Mitsubishi states that the "$14.9 million payment obligation Westcode committed to in the MOU

. . . is a result of Westcode's delayed payments due for transit projects."  15-cv-505, Dkt. No. 54

at 5-6 (citing MOU Article 1).  In its complaint in the MOU Action, Mitsubishi specifically states

that the money due under the MOU arose solely out of unpaid invoices for the R160 project and royalty payments due under the LTAA. *See* 15-cv-505, Dkt. No. 1 at ¶ 13 ("By July 31, 2008, Westcode owed Mitsubishi Electric $14,590,876.86 in *unpaid New York City Transit R160 invoices*. Westcode also owed Mitsubishi Electric $279,090.20 in unpaid royalties *pursuant to the 1997 [LTAA]*") (emphasis added).

The Court finds that the obligations in the MOU that form the basis for Mitsubishi's breach of contract claim clearly "touch matters" contemplated by the JVAs' arbitration clauses. The simple fact is, without the parties responsibilities arising out of the JVAs, there would be no payments due under the MOU. Thus, the alleged $14.9 million obligation that Westcode owed Mitsubishi pursuant to the MOU falls well within the JVAs' broad mandate to arbitrate any claims "arising out of th[e] AGREEMENT[S] or the PROJECT[S]." Dkt. No. 1 at 66 (R142A); Dkt. No. 21 at 25 (R160) & 42 (PATH). Moreover, the language in the WHEREAS clauses of the MOU clearly indicates that the parties intended the agreement to apply to the payments that arose under the Projects covered by the written JVAs. *See In re Lehman Bros. Holdings Inc.*, 439 B.R. 811, 825-26 (Bankr. S.D.N.Y. 2010) ("Although such 'whereas' clauses have no operative effect, they do offer guidance as to the intentions of the parties when entering into the . . . agreement"); *see also Tromp v. City of New York*, 465 Fed. Appx. 50, 53 (2d Cir. 2012).

In the MOU Action, Mitsubishi argues that "when Westcode fell behind on its payments to [Mitsubishi], the parties *did not* attempt to resolve those issues through arbitration before the International Chamber of Commerce in Paris, as would have been required by the JVAs. Rather, the parties executed a new agreement, with no arbitration provision, to govern the payment obligation and the schedule through which payments were to be made." 15-cv-505, Dkt. No. 54 at 6. To support this argument, Mitsubishi cites *Primex International Corp. v. Wal-Mart Stores,*

14

*Inc.*, 89 N.Y.2d 594 (1997) for the proposition that only claims asserted for a direct breach of the JVAs may be subject to the arbitration clauses, while claims for the breach of the MOU should be settled through litigation. In *Primex*, the parties entered into two agreements in 1990 and 1993, that each contained arbitration clauses, and a subsequent agreement in 1995 that did not contain an arbitration clause but included a general merger clause. 89 N.Y.2d at 596-97. The New York Court of Appeals held that "enforcement of the parties' obligations to arbitrate disputes arising out of their 1990 and 1993 Agreements . . . is not precluded by the merger clause in [the 1995 Agreement]." *Id* at 600. Thus, the court found that any causes of action arising under the 1990 and 1993 agreements were subject to arbitration, while claims pursuant to the 1995 agreement should be resolved in court. *Id.* at 601-02 ("[A]bsent a clear manifestation of contrary intent, it is presumed that the parties intended that the arbitration forum for dispute resolution provided in an agreement will survive the termination of the agreement as to subsequent disputes *arising thereunder* . . . .") (emphasis in original). Thus, while the Court of Appeals held that the claims arising solely under the 1995 agreement should be litigated and not sent to arbitration, the case does not defeat the general rule that claims arising out of a previous agreement containing an arbitration clause are subject to arbitration, notwithstanding a subsequent agreement between the parties that does not contain an arbitration clause.

The Court of Appeals decision in *Inryco, Inc. v. Parsons & Whittemore Contractors Corp.*, 55 N.Y.2d 666, 667 (1981), is also instructive on this issue. In that case, the parties entered into five written construction contracts, each of which contained broad arbitration clauses, and then subsequently entered an agreement to settle disputes arising out of the original contracts. The Court of Appeals held that the parties had to submit all claims arising out of the original contracts to arbitration, even if they were essentially asserting a cause of action about the

subsequent agreement to settle the disputes of the underlying contracts. *Id.* The court reasoned that

> [t]hese broad [arbitration] provisions encompass all disputes arising out of the contracts, including those relating to subsequent agreements concerning obligations under the original contracts. . . . '[O]nce the parties to a broad arbitration clause have made a valid choice of forum, as here, all questions with respect to the validity and effect of subsequent documents purporting to work a modification or termination of the substantive provisions of their original agreement are to be resolved by the arbitrator.

*Id.* (quoting *Matter of Schlaifer v. Sedlow*, 51 N.Y.2d 181, 185 (1980))

Mitsubishi asserts that the existence of choice-of-law and merger clauses in the MOU precludes the application of the previously agreed upon arbitration clause in the JVAs. *See* Dkt. No. 60 at 7. Article 9 of the MOU states that "[t]his MOU shall in all respects be construed and interpreted in accordance with the laws of the State of New York, the United States of America." Dkt. No. 1 at 73. Article 10 of the MOU states "[t]his MOU constitutes the entire agreement between the Parties and supersedes any prior written or oral agreement between the Parties concerning the subject matter. No modifications of this MOU shall be binding unless executed in writing by both Parties." *Id.* While this merger clause may provide support to Mitsubishi's argument that the MOU is a separate agreement from the written JVAs, rather than merely an amendment to them, it does not act as a barrier to the broad arbitration clauses contained in the JVAs from governing disputes that arise out of the Projects. *See Primex Int'l Corp.*, 657 N.Y.S.2d at 600.

The Second Circuit has established that "an agreement to arbitrate is superseded by a later-executed agreement containing a forum selection clause if the clause 'specifically precludes' arbitration, but there is no requirement that the forum selection clause mention arbitration." *Goldman, Sachs & Co. v. Golden Empire Schools Fin. Auth.*, 764 F.3d 210, 215 (2d Cir. 2014)

(internal citations and quotations omitted). The Second Circuit draws a distinction between forum selection clauses that explicitly supersede previous arbitration agreements, and those that provide resolution by courts for some issues, but allow the underlying arbitration clauses to be enforced. In *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, the Second Circuit held that "an arbitration agreement was not superseded by an agreement providing that a bank's customer 'submits to the jurisdiction of any New York State or Federal court' and 'agrees that any action *may* be heard' in such court." *Goldman, Sachs & Co.*, 764 F.3d at 215 (quoting *Bank Julius Baer & Co., Ltd. v. Waxfield Ltd.*, 424 F.3d 278, 282 (2d Cir. 2005), *abrogated on other grounds by Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287 (2010)). The subsequent agreement in *Bank Julius* also contained a merger clause that stated "[t]his Agreement supersedes all prior agreements and understandings between [the parties]. It constitutes the entire agreement of the parties." 424 F.3d at 282. In contrast, the Second Circuit held in *Applied Energetics, Inc. v. NewOak Capital Markets, LLC* that "an arbitration agreement was superseded by an agreement stating that '[a]ny dispute arising out of this Agreement shall be *adjudicated* in' New York Courts, and that the agreement and related documents (not including the earlier arbitration agreement) 'constitute the entire understanding and agreement' of the parties" with respect to the issues allegedly subject to arbitration. *Goldman, Sachs & Co.*, 764 F.3d at 215 (quoting *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 523-24 (2d Cir. 2011)) (emphasis added). The Second Circuit drew the distinguishing line between these two cases as hinging on whether the merger and forum selection clause in the subsequent agreement "specifically preclude[s] arbitration" and if the "forum-selection clause was 'all-inclusive' and 'mandatory.'" *Id.* (quoting *Applied Energetics*, 645 F.3d at 525).

Here, the choice of law provision is even less mandatory than that involved in *Julius Bank*. Article 9 does not state that the parties shall resolve disputes in New York courts, nor does it submit the parties to the jurisdiction of New York courts. Rather, it simply states that the laws of New York shall be applied to the interpretation and construction of the MOU. Thus, far from being a "mandatory" and "all inclusive" forum-selection clause that precludes subjecting any dispute to arbitration under the previous arbitration clauses of the JVAs, the MOU's choice of law provision merely provides a means for interpreting the underlying contract, and those means do not mandate access to the courts system. Further, the merger clause states that it supersedes any prior agreements between the parties "concerning the subject matter" of the MOU. Dkt. No. 1 at 73. Since the MOU did not address the subject of arbitration versus adjudication, then the merger clause cannot apply to specifically preclude arbitration as stated in the JVAs because that issue was not within the "subject matter" of the MOU. Thus, the Court finds that the choice of law provision and merger clause in the MOU do not specifically preclude the arbitration of claims arising out of the JVAs. The parties' disputes over payments due under the MOU, all of which originated from the obligations established by the Projects covered by the JVAs, are subject to the arbitration clauses contained in the JVAs. Accordingly, any actions undertaken by Mitsubishi in an attempt to litigate the MOU claims are relevant to the inquiry as to whether Mitsubishi has waived its right to enforce the arbitration provisions against Westcode's causes of action in the JVA Action. *See PPG Indus., Inc.*, 128 F.3d at 109 (noting that actions taken in two separate but closely related cases can be considered together for purpose of a waiver analysis).

### 2. Time Elapsed from Commencement of Litigation

While Westcode continues to assert that it commenced the JVA Action on April 14, 2014 by filing a praecipe for a writ of summons, the Eastern District of Pennsylvania decided, prior to

transferring the case to this Court, that the filing of that praecipe was not the actual commencement of the case. *See* Dkt. No. 32 at 11-13. Further, even if filing a praecipe was considered the commencement of the action for certain purposes, it could not be counted against Mitsubishi for failing to move for arbitration before the complaint was filed because Pennsylvania has no mechanism for seeking arbitration based solely on a writ. *See PaineWebber Inc. v. Faragalli*, 61 F.3d 1063, 1068 (3d Cir. 1995) ("Pennsylvania courts have emphasized that a Writ of Summons is not a 'pleading.' Hence the defendant cannot file preliminary objections to the Writ, which is the Pennsylvania procedure for asserting the defense of an agreement to arbitrate") (citations omitted). Westcode commenced the JVA Action on May 5, 2015 by filing its complaint in the Court of Common Pleas in Chester County, Pennsylvania. *See* Dkt. No. 1 at 12. On May 27, 2015, Mitsubishi removed the action to the District Court for the Eastern District of Pennsylvania on the basis of diversity jurisdiction. *See id.* at 7. Mitsubishi filed a motion to dismiss on July 1, 2015 and a motion to compel arbitration on September 9, 2015. *See* Dkt. Nos. 10, 21. Thus, approximately four months passed from the commencement of the JVA Action to when Mitsubishi moved to compel arbitration.

Mitsubishi commenced the MOU Action in this court on April 27, 2015. *See* 15-cv-505, Dkt. No. 1. Westcode filed its answer asserting two counterclaims on January 28, 2016. *See* 15-cv-505, Dkt. No. 38. Mitsubishi filed its motion to compel arbitration of the counterclaims on February 18, 2016. *See* 15-cv-505, Dkt. No. 42. Thus, while approximately ten months passed from the commencement of the MOU Action until Mitsubishi moved to compel arbitration, less than a month passed between Westcode's assertion of the allegedly arbitrable counterclaims and Mitsubishi's motion. Accordingly, the time elapsed prior to Mitsubishi's motions to compel arbitration, standing alone, is not so egregious as to constitute waiver. *See, e.g., Brownstone Inv.*

19

*Grp., LLC v. Levey*, 514 F. Supp. 2d 536, 540 (S.D.N.Y. 2007) ("[The] delay of more than ten months in seeking arbitration is insufficient by itself to support a finding of waiver") (citations omitted).

### 3. The Amount of Litigation

The parties have engaged in extensive litigation in both actions up to this point. The following charts provide a brief overview of the filings to date in each of the actions.

| JVA Action | |
|---|---|
| 5/5/15 | Westcode files complaint in Pennsylvania |
| 5/27/15 | Mitsubishi removes to Eastern District of Pennsylvania |
| 7/1/15 | Mitsubishi files motion to dismiss for failure to state a claim |
| 9/15/15 | Mitsubishi files motion to compel arbitration |
| 12/8/15 | Order transferring case to the Northern District of New York |
| 1/27/16 | Initial pre-trial conference held |
| 2/5/16 | Mitsubishi files motion to stay discovery |
| 3/10/16 | Order denying motion to stay discovery |
| 3/10/16 | Order consolidating the two cases for discovery purposes |
| 3/18/16 | Order denying in part and granting in part Mitsubishi's motion to dismiss |
| 4/21/16 | Hearing conducted to discuss discovery issues |
| 5/27/16 | Mitsubishi files motion to stay discovery |
| 6/17/16 | Order granting motion to stay discovery |

| MOU Action | |
|---|---|
| 4/27/15 | Mitsubishi files complaint |
| 6/29/15 | Westcode files motion to dismiss |
| 12/22/15 | Order that mandatory disclosures are to be exchanged by 1/13/16 |

20

| | |
|---|---|
| 1/14/16 | Mitsubishi files motion for summary judgment |
| 1/28/16 | Westcode files answer asserting counterclaims |
| 1/29/16 | Uniform pre-trail scheduling order filed |
| 2/18/16 | Mitsubishi files motions to compel arbitration or, in the alternative dismiss, Westcode's counterclaims |
| 3/7/16 | Westcode files motion for judgment on the pleadings |
| 5/27/16 | Mitsubishi files motion to stay discovery |
| 6/17/16 | Order granting motion to stay discovery |

As the record clearly indicates, both parties have engaged in extensive litigation in each of these cases. In the JVA Action, Mitsubishi filed an initial motion to remove to federal court and subsequently filed two substantive motions. In the MOU Action, Mitsubishi has filed three additional dispositive motions. In addition to Mitsubishi's litigious actions, Westcode has vigorously opposed each of Mitsubishi's motions and asserted two of its own dispositive motions in the MOU Action, although it later voluntarily withdrew its motion to dismiss. While Mitsubishi moved to stay discovery on February 5, 2016 in the JVA Action and May 27, 2016 in the MOU Action, these motions came well after the parties had expended significant amounts of time and resources litigating the pending motions in each of the cases. Significantly, Mitsubishi did not move to stay either action pending the decision on the arbitration issue pursuant to 9 U.S.C. § 3. Such a motion to stay the entire action pending arbitration "would have been a clear statement of [Mitsubishi's] intention to arbitrate." *PPG Indus., Inc.*, 128 F.3d at 109.

### 4. Prejudice

A finding of prejudice to the non-moving party is the key to a waiver analysis. *See Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002) (quoting *Rush v. Oppenheimer & Co.*, 770 F.2d 885, 887 (2d Cir. 1985)) ("[W]aiver of the right to compel

arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated").  Prejudice can be show in either of two ways: "[p]rejudice can be substantive, such as when a party loses a motion on the merits and then attempts, in effect, to relitigate the issue by invoking arbitration, or it can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense." *Id.* (quoting *Kramer v. Hammond*, 943 F.2d 176, 179 (2d Cir. 1991)).  Sufficient prejudice to infer waiver has been found in cases "when a party seeking to compel arbitration engages in discovery procedures not available in arbitration, makes motions going to the merits of an adversary's claims, or delays invoking arbitration rights while the adversary incurs unnecessary delay or expense." *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993) (internal citations omitted).

Here, Mitsubishi filed both of its motions to compel arbitration prior to the Court issuing a decision on any of the other pending motions.  Accordingly, any prejudice must be premised on the fact that Westcode has been required to respond to numerous motions given Mitsubishi's failure to move for a stay pending arbitration.  The JVA Action was initially commenced in Pennsylvania Court of Common Pleas.  Rather than move to compel arbitration initially in that action, Mitsubishi removed the case to the Eastern District of Pennsylvania.  *See* Dkt. No. 1; *see also Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co.*, 936 A.2d 1109, 1113 (Pa. Super. Ct. 2007) (noting that Pennsylvania courts apply the same presumption in favor of arbitrability as the FAA).  Once the case was in the district court, Mitsubishi first moved to dismiss or transfer the action to this Court prior to moving to compel arbitration of Westcode's claims.  *See* Dkt. Nos. 10, 21.  As a result, the Eastern District of Pennsylvania first considered Mitsubishi's motion to transfer, which was granted without addressing the substantive arguments to dismiss or to compel arbitration.  *See* Dkt. No. 32.  After the action was transferred to this Court, the parties filed

supplemental briefs on the pending motions to update their arguments with Second Circuit law. *See* Dkt. Nos. 47, 50, 52, 53, 60. Thus, as a result of Mitsubishi's delay in moving to compel arbitration, significant resources from both the litigants and the courts have been expended on resolving the issues of the JVA Action through litigation, as opposed to proceeding directly to arbitration. *See La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 160 (2d Cir. 2010) (noting that factors of judicial economy arising from transfers between district courts and consolidation of related actions, while not dispositive, weigh in favor of finding waiver).

The most significant evidence of prejudice has been from Mitsubishi's substantial and continued litigation in the MOU Action. While Mitsubishi filed its motions to compel arbitration of Westcode's counterclaims shortly after they were asserted and prior to any order by the Court on a separate dispositive motion, Mitsubishi did not move to stay any further litigation at that time. This failure to move for an immediate stay required Westcode to respond to Mitsubishi's motion to dismiss the counterclaims, and its motion for summary judgment. In responding to these motions, Westcode was required to set forth its litigation strategy and raise any issues that may be present with Mitsubishi's claims, such that Mitsubishi would receive a substantive advantage in arbitration by having this insight into Westcode's legal arguments. *See id.* at 160 (noting that the receipt of a letter from the opposing party detailing the deficiencies within the plaintiff's complaint evidenced prejudice because the plaintiff would be able to use that information gained in litigation to its advantage in an arbitration proceeding).

Westcode has expended significant amounts of time and money in defending the claims that Mitsubishi has pursued in this Court. Westcode filed at least five briefs in opposition to Mitsubishi's motions in the JVA Action, and in excess of ten briefs related to motions in the MOU

23

Action.  As of September 24, 2015, Westcode contends that it had incurred $44,430 in legal fees for the two actions.  *See* Dkt. No. 52-1 at 19.  This cost has undoubtedly risen dramatically given the significant amount of motion practice that has occurred since September of 2015.  *See PPG Indus., Inc.*, 128 F.3d at 107 (noting that incurring unnecessary expense in litigating arbitrable claims may be evidence of waiver, although "[i]ncurrng legal expenses inherent in litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver").

Westcode contends that it has been required to disclose evidence in discovery in this case that would not have been available to Mitsubishi in an arbitration proceeding.  *See* Dkt. No. 52-1 at 21.  Specifically, Westcode asserts that as "part of its self-executing disclosure obligations, [it] produced 585 pages of documents to Mitsubishi on February 12, 2016."  *See id.* at 7; Dkt. No. 52-2 at 1-4.  While it is unclear whether this evidence would have been available to the parties in arbitration proceedings, such substantial mandatory disclosures prior to arbitration weigh in favor of finding waiver.  *See PPG Industries, Inc.*, 128 F.3d at 109 & n.3 (drawing a distinction between insignificant disclosures of records already in the opposing party's possession and using "the judicial process to secure a substantial amount of information that [the moving party] otherwise would not have had in its possession").

Mitsubishi contends that its actions cannot amount to waiver because it has consistently sought to enforce arbitration of claims arising out of the JVAs while maintaining its argument that the MOU is not subject to arbitration.  *See* Dkt. No. 60 at 6-7.  In *LG Electronics, Inc. v. Wi-Lan USA, Inc.*, 623 Fed. Appx. 568 (2d Cir. 2015), the Second Circuit held that a defendant did not waive its right to compel arbitration of certain claims by first attempting to litigate those claims in court.  623 Fed. Appx. at 569-70.  There, the defendant "colorably maintained" that the claims it was pursuing were not subject to an arbitration clause contained in a separate agreement.  *Id.* at

570. It was only after the opposing party raised the issue of arbitrability that the defendant then moved to compel arbitration. The Second Circuit held that the defendant's actions of initially pursuing litigation of its claims were not inconsistent with its intent to arbitrate because, as soon as it became aware that its claims may be subject to arbitration, it moved to compel the entire action to arbitration. *Id.* The instant dispute is distinguishable from *LG Electronics* because neither party has moved to compel the entire MOU Action to arbitration. Given the Court's earlier finding that the MOU is, in fact, covered by the JVAs' arbitration clauses, it would be unduly prejudicial to Westcode to force it to arbitrate its claims, while allowing Mitsubishi to litigate its related and intertwined arbitrable causes of action in this Court.

The Court recognizes that the FAA requires piecemeal litigation when certain claims are subject to arbitration and others are non-arbitrable. *See, e.g.*, *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) ("If some claims are non-arbitrable, while others are arbitrable, then we will sever those claims subject to arbitration from those adjudicable only in court"). However, Mitsubishi has failed to cite any case, and the Court is unable to find support for the proposition that a party may compel arbitration of some claims, but choose to litigate other, interrelated claims that are subject to the same arbitration clause. Accordingly, the Court finds that Mitsubishi waived its right to compel arbitration of Westcode's claims in the JVA Action by pursuing substantial and continued litigation in this Court and Mitsubishi's motion to compel arbitration is denied.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Mitsubishi's motion to compel arbitration (Dkt. No. 21) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local rules.

**IT IS SO ORDERED.**

Dated: July 11, 2016
      Albany, New York

Mae A. D'Agostino
U.S. District Judge